## Case No. 4,767.

FIELD v. INSURANCE CO. OF NORTH AMERICA.

[6 Biss. 121.][1]

Circuit Court, N. D. Illinois. June, 1874.

Bennett, Kretzinger & Johnson, for plaintiff.

Wharton & Canfield, for defendant.

BLODGETT, District Judge (charging jury). This is an action on a policy of insurance issued by the defendant, dated on the 20th of January, 1872, whereby defendant insured the plaintiff against loss by fire for the term of one year, for the sum of $3,000, upon her two-story frame warehouse, size, 22x40 feet, with addition, 16x24 feet, used for shelling corn and elevating by horse-power, and for storing grain, situate on lot five in block four, in Galva, Illinois, and which policy at the expiration of the year was renewed and extended for the term of another year.

The property insured was destroyed by fire on or about the 20th day of March, 1873, while the policy by the terms of renewal remained in full force.

The defendant having refused to pay the loss, this suit is brought.

No question is made by the defendant as to the fact of the issue of the policy or its extension, nor is it denied that the property insured was destroyed by fire during the life of the policy. The defendant, however, denies its liability in this case upon the following grounds.

1st. That the property in question was insured for more than its value, and the policy thereby became void.

2nd. That the plaintiff was not at the time the said insurance was effected, nor at the time of said loss, the owner in fee of the lot on which the building in question stood, and the nature of the plaintiff's title to or interest in said lot was not expressed in writing in the policy.

3d. That plaintiff did not within apt time after the loss, render to defendant proper proofs of loss as required by the terms of the policy.

4th. Defendant insists that plaintiff was not at the time of the issuing of the said policy, nor at the time of the fire, the owner of the property insured, but that the same was in fact. owned by her husband Solomon Field.

5th. That even if defendant is liable at all to plaintiff on this policy, the value of the property is far less than is claimed by plaintiff.

I will consider the various points made by the defendant in their order.

That the policy is void because the plaintiff has caused the property to be insured for more than its value.

The policy contains a provision that "if the insured shall cause the property to be insured for more than its value, the policy shall be void."

The fair and legal meaning of this language is that if the insured shall intentionally obtain insurance on her property to an

amount greater than its value, with a design thereby of obtaining, in case of loss, more than her property was fairly worth, she shall forfeit her policy.

It is a clause to prevent fraudulent over-valuation, and intended to deprive men of the benefit of such intentional over-valuation. But the clause does not render void a policy for such slight over-estimates of value as may be reasonably accounted for from difference of opinion as to value.

Value is always to a considerable extent a matter of opinion and judgment, and it would not be right to hold a policy void for over-valuation when it was clear from the proof that there was no intention to deceive, and when there was room for an honest difference of opinion. And this is especially true when the insurer, through its agent, has an equally good opportunity with the insured to ascertain the value of the property, and when the value is a matter of discussion between the parties at the time the insurance is effected, and the agent is requested to personally examine the property, and act upon his own judgment as to its value. In such cases, unless some fraudulent concealment of material facts is shown, the over-valuation must appear from the proof to be very considerable and palpable, and to have been intentional, to avoid the policy under this clause.

In this case plaintiff has introduced proof tending to show that defendant's agent was requested to examine the property and place all the insurance upon it that it would bear; that the agent lived in the same town where the property was located, and had some personal knowledge of the property. If you believe this testimony, then you ought not to find this policy void for over-valuation, unless you are satisfied that the agent was in some way imposed upon and induced to issue the policy for the amount in question, by reason of something more than a mere error of judgment on the part of the plaintiff or her agent as to the value of the property. On this branch of the defense, the defendant has the laboring oar and must make out the charge of intentional over-valuation by a preponderance of evidence.

As to the second point insisted upon, the policy contains this clause, "If the property insured be held in trust or on commission, or by a leasehold or other interest not amounting to absolute or sole ownership, or if the building insured stands on leased ground, it must be so represented to the company and expressed in the policy in writing; otherwise the insurance will be void." The main object of this clause is to prevent parties from insuring property in which they have no insurable interest. It is admitted by the plaintiff in this case that she did not own the fee simple title to the lot on which the property insured stood, but that she did own the building, and moved it on the lot under a verbal arrangement with the owner, whereby she was to pay the taxes and have the

privilege or option of buying the lot for $400, whenever she saw fit to do so, and the owner was not to sell to any one else without notifying plaintiff and giving her the privilege of buying at the price stipulated. There is nothing in this policy to indicate that plaintiff's interest in the lot is less than a fee-simple title. The insurance is upon her two-story frame warehouse, situate on lot 5, block 4, etc. Upon the face of the policy it would appear that she claimed to be the owner of the lot as well as the building; that is, there being no expression to the contrary, such would be the legal inference from the language of the policy itself. The agent of the defendant, who wrote the policy, testified that when the application for the policy was made, the husband of plaintiff, who signed the application in her behalf, said, when asked about the title of the lot, that he had as good as bought it, while the evidence on the part of the plaintiff tends to show that when the application was made, a full and true statement of the facts in regard to the terms on which the warehouse had been moved upon the lot was made to defendant's agent, and he was referred to the owner of the lot for further information in regard to the matter. You will observe in this connection that no answer was written into the application in reply to the question as to the title. This application is filled up by defendant's local agent at Galva, but whether signed by plaintiff's husband in her behalf in blank and filled up afterwards by the agent, or whether filled as far as it now is before he signed it, is a matter upon which there is a conflict of evidence. If, however, you are satisfied from all the evidence in the case, that at the time the policy was issued the agent of defendant knew the actual condition of the title to the lot,—that is, knew that plaintiff was occupying the lot under a verbal contract with the owner for the occupation or purchase of the same at her option,—and failed or neglected to write into this application or policy such statements in regard to the title, then defendant cannot avoid this policy by reason of the failure to express in the policy the exact terms of plaintiff's interest in the lot. In other words, it is a question of fact for you to determine from the evidence whether the agent of the defendant knew at the time he issued this policy to the plaintiff, that she did not own the fee-simple title to said lot; and if you find he did so know, then his failure to make a proper note of the fact in the policy does not render the policy void. It was the duty of the agent to have made this explanation as to the title if he knew the facts, and the company will not be allowed to take advantage of his neglect in that particular, if he had such information.

As to the third point of the defense, the policy requires that the assured shall give immediate notice of the loss, "and as soon thereafter as possible render a particular ac-

count and proof thereof, signed and sworn to by him," and a failure to do so forfeits all claim under the policy. The defendant claims that plaintiff has not complied with this condition.

Plaintiff claims, first, that she did in apt time—that is, on the 14th day of April, 1873 —render the proofs of loss required; second, that defendant, by its own action, waived the rendering of the proofs of loss.

It is admitted that plaintiff did furnish to defendant, on the 14th day of April, 1873, a proof of loss duly sworn to, but defendant insists that it does not comply with the policy, because she does not state her interest in the property insured, nor does she state in detail the nature of her ownership of the property. It being admitted that plaintiff did submit to defendant what purported to be and was intended as a proof of loss, in compliance with this condition of the policy, it is a question of law whether such proof was sufficient, no question being raised at the time; and I instruct you that the proof rendered was a substantial compliance with the terms of the policy. True, it might have been more specific, but it stated substantially all that she was required to state. That is, it gave the full written portions of the policy and all the indorsements thereon. It stated there was no other insurance, which is admitted to be the fact; it stated the actual cash value of the property at the time immediately preceding the fire; it stated that the property belonged to the plaintiff, which, I think, was a substantial compliance with the requirement that she should state the ownership and interest of the assured. It also states the purposes for which the building was occupied and by whom, the date of the loss and amount, and how the fire originated if known.

But as there is testimony in the case tending to show a waiver of proof of loss, I shall also ask you to make a special finding upon this point as a question of fact.

The evidence on the part of the plaintiff, bearing on this point, tends to show that, a few days after the fire in question, Mr. Holden, who was a general agent and adjuster for defendant, went to Galva and had an interview with plaintiff and her husband; that after being fully informed in regard to the condition of plaintiff's title to the lot, he informed plaintiff or her husband that the company was not liable for said loss, by reason of the failure to truly state the title to the lot in the policy, and only offered to make some small payment by way of gratuity or to save a law-suit. If you are satisfied from the evidence that defendant by its agent, did refuse to pay said loss on the ground of the invalidity of the policy for the reason stated, such facts may be considered by you as tending to show a waiver of the proofs of loss; for it may be properly asked, why should plaintiff be required to submit proofs as to the nature and extent of her loss, if defendant did not intend to pay or even examine such proofs, but placed its refusal to pay on entirely other grounds, which the proofs of loss called for by the policy could not remove or do away with?

As to the fourth point, whether the plaintiff was the owner of the warehouse at the time of the loss and at the time the policy was issued, you have heard all the proof. It is admitted that plaintiff was the wife of Solomon Field at the time this policy issued, and at the time of the loss. She claims to have purchased the property with her own means, and I take it there can be no doubt it was either hers or her husband's; at least defendant does not contend that it belonged to any one else. If the husband, by his dealing with defendant, had estopped himself from claiming the property, that is, if he had insured it as the plaintiff's, then, as between plaintiff and defendant, she had the right to assert the ownership and take the insurance. You have heard all the proof on this question of ownership, and can say whether the plaintiff has or has not shown an ownership of this property as against defendant. And, finally, as to the value of the property destroyed which was covered by the policy, it is for you to say under the proof what that value was. If you are satisfied from the evidence that the building and addition insured, with the machinery, excluding the fanning-mill, was of the value of $3,000 at the time of the fire, then the plaintiff will be entitled to recover that amount with interest at six per cent., since the expiration of sixty days after proofs of loss were furnished or waived.

If it was worth less than that amount, then she will be entitled to recover what it is found by you to be worth under the proof, with interest.

The jury returned a verdict for plaintiff, fixing damages at $3,000, and also found that proofs of loss had been waived by defendant.